UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| PIERRE BENNETT | ) | Case No. 07-10864-SSM |
| | ) | Chapter 11 |
| Debtor | ) | |

**MEMORANDUM OPINION**

A hearing was held on April 21, 2008, on confirmation of the second amended plan filed by the debtor on January 25, 2008. The plan, which proposes an 11 percent dividend on unsecured claims, has been accepted by the required majority of the general unsecured creditor class but has been objected to by Cathy L. Perry, the holder of an unsatisfied $5,700 judgment against the debtor. Ms. Perry did not appear at the confirmation hearing to press her objection,[1] and the court, after considering the evidence presented at the hearing, ruled that the plan would be confirmed. The purpose of this opinion is to briefly state the reasons for the court's ruling, both for the benefit of any parties who were not present and for the benefit of any reviewing court if an appeal should be taken.

Background

Pierre Bennett, who makes his living operating a company called Fantasy Vacations, Inc., filed a voluntary petition for reorganization under chapter 11 of the Bankruptcy Code in this court on April 9, 2007, and has remained in control of his affairs as debtor in possession. The

---

[1] To be fair, Ms. Perry resides in Chicago and may well have felt that the expense of engaging local counsel, or of traveling to Alexandria, Virginia, to press her objection *pro se*, was not economically justified. The court has nevertheless considered her arguments.

plan before the court was filed on January 21, 2008.  In addition to providing for a single class of administrative expense claims, it divides creditors into six classes of secured claims and two classes of unsecured claims, all but one of which are impaired.  A summary of the classes and their treatment is as follows:

| Class | Description | Treatment |
|---|---|---|
| II | Claim of Aurora Loan secured by 2127 Cabots Point Lane | Arrears of $19,187.12 to be paid with 8% interest over 60 months |
| III | Claim of Aurora Loan secured by 2127 Cabots Point Lane | Arrears of $8,101.40 to be paid with 8% interest over 60 months |
| IV | Claim of CLC Consumer Service secured by 2127 Cabots Point Lane | Arrears of $4,031.30 to be paid with 8% interest over 60 months |
| V | Claim of CLC Consumer Service secured by 2127 Cabots Point Lane | Arrears of $4,840.86 to be paid with 8% interest over 60 months |
| VI | Claim of Bank United secured by 6484 Sharon Kay Court | Arrears of $6,624.24 to be paid with 8% interest over 60 months |
| VII | Claim of Citifinancial secured by 1995 Mercedes Bens 500 SL | Remaining balance of approx. $3,500 to be paid in full on confirmation of plan |
| VIII | Claim of Daimler Chrysler on guarantee of automobile lease[2] | Unimpaired |
| IX | General unsecured claims | To be paid at 11 cents on the dollar over 60 months |

Although Ms. Perry has a judgment lien against the debtor's residence securing her claim, the debtor has brought an adversary proceeding to avoid the lien as a preference, since it was recorded within 90 days of the filing of the chapter 11 petition.  *See* § 547(b), Bankruptcy Code.  Accordingly, the plan treats her claim in Class IX as a general unsecured claim.

---

[2] The plan describes this as a secured claim, but since the automobile is not owned by the debtor, the claim is unsecured from bankruptcy estate's perspective, regardless of how the creditor might view the matter.  *See* § 506(a)(1), Bankruptcy Code ("An allowed claim of a creditor secured by a lien on *property in which the estate has an interest . . .* is a secured claim.") (emphasis added).

None of the creditors in Classes II through VIII returned a ballot. Four unsecured creditors, including Ms. Perry, returned timely ballots. Three of the ballots, representing claims totaling $142,052.96, accepted the plan.[3] Ms. Perry rejected the plan. Class IX therefore accepted the plan by 75% in number and 96.7% in dollar amount, while Classes II though VII did not accept the plan. See *In re Jim Beck, Inc.*, 207 B.R. 1010 (Bankr. W.D. Va. 1997) (holding that class that has not cast ballot has not accepted chapter 11 plan); *In re Smith*, 357 B.R. 60 (Bankr. M.D. N.C. 2006) (holding that failure of creditor to cast a ballot does not constitute an acceptance of the plan by that creditor).

The debtor testified at the confirmation hearing that his monthly income, after deducting monthly living expenses, left a surplus of approximately $4,400.00, which was sufficient to make the payments required by the plan.[4] He also testified that based on present real estate values and the amounts owed on his properties, unsecured creditors would receive little or no distribution in a chapter 7 case.

## Discussion

The requirements for confirmation of a chapter 11 plan are set forth in § 1129(a), Bankruptcy Code. Only a few of those are actually at issue in this case. The first is whether the plan was proposed in good faith. § 1129(a)(3), Bankruptcy Code. The second is whether non-accepting creditors will receive payments having a present value equal to what they would

---

[3] An additional creditor returned a ballot accepting the plan after the deadline, but counting it would not affect the analysis.

[4] The required monthly arrearage payments on secured claims total $770.08. The required payment on unsecured claims will depend on the resolution of any objections to those claims, but accepting the debtor's estimate of approximately $440,000 in allowed unsecured claims, payment of an 11% dividend over 60 months would require $806.67 per month.

receive if the debtor were liquidated under chapter 7.  § 1129(a)(7), Bankruptcy Code.  The third is whether all impaired classes have accepted the plan.  § 1129(a)(8), Bankruptcy Code.  And the fourth is whether at least one impaired class has accepted the plan.  § 1129(a)(10).   If all the requirements for confirmation are met except for the requirement that <u>all</u> impaired classes accept the plan, the plan may nevertheless be confirmed under the so-called "cram-down" provisions of § 1129(b), Bankruptcy Code, if the court finds that the plan does not discriminate unfairly against, and is fair and equitable to, the non-accepting classes.

A class of claims has accepted a plan if more than one-half in number and at least two-thirds in dollar amount of claims actually voting vote to accept the plan.  § 1126(c), Bankruptcy Code.  Clearly, Class IX (the class of general unsecured creditors) has accepted the plan since 75% in number and 96.7% in dollar amount of the four voting claims voted to accept the plan, thereby satisfying the requirement that, if there are any impaired classes, at least one of them must accept the plan.  Since Ms. Perry (not to mention the non-voting creditors) did not accept the plan, she must, at a minimum, receive payments under the plan having a present value equal to what she would receive if the debtor's property were liquidated under chapter 7.[5] § 1129(a)(7), Bankruptcy Code.  The testimony at the hearing established that this was the case.

---

[5] Present value is a recognition that a dollar today is worth more than a dollar paid a week, a month, or a year in the future. Mathematical formulas exist for calculating the present value of a future payment, or a stream of future payments, based on an assumed rate of interest (to account for the time value of money) called a discount rate.  Using such a formula, the present value of $100 paid over 60 months at a discount rate of 8% per year would be $82.20.  Thus, the nominal 11% dividend to be paid to the unsecured creditors under the debtor's plan has a present value, in today's dollars, of 82.20 ÷ 100 times 11%, or 7.4%.

Of course, even if a plan satisfies the liquidation test, it would not satisfy the good faith requirement if the debtor had the ability to pay a greater dividend.[6] However, no evidence was presented at the hearing to show that the debtor had the financial ability to pay more on account of unsecured claims than proposed in his plan. Ms. Perry also argues that the minimal dividend is unfair to her because the loan she made to the debtor was procured by fraud. If so, Ms. Perry had a complete remedy, since a debt for money obtained by fraud is excluded from the chapter 11 discharge of an individual. §§ 1129(d)(2) and 523(a)(2), Bankruptcy Code. However, the exclusion of such a debt from discharge requires the timely filing of a complaint with the Bankruptcy Court to obtain a judgment that the debt is nondischargeable. § 523(c), Bankruptcy Code; Fed.R.Bankr.P. 4007(c). The deadline for such a complaint is 60 days after the first date

---

[6] Additionally, since the debtor is an individual, and since an unsecured creditor has objected to confirmation, the value to be distributed under the plan must not be less than the "projected disposable income" (calculated using the methodology that applies in chapter 13 cases) to be received by the debtor in the 60-month period following confirmation. § 1129(a)(15), Bankruptcy Code. "Disposable income" in a chapter 13 case is calculated using the "means test" implemented by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 for determining whether a chapter 7 filing is presumed to be an abuse. § 1325(b)(3), Bankruptcy Code. This computation begins with "current monthly income," which is an arithmetic average of the income (with certain exclusions, such as social security benefits) received in the six months preceding the filing of the bankruptcy petition. § 101(10A), Bankruptcy Code. Deducted from this are the allowances for food, housing, transportation, and other living expenses specified in the Internal Revenue Service collection standards as well as certain additional deductions specified in the statute, including the average monthly payment on secured debts over the 60-month commitment period and the 60-month average of payments needed to cure any petition defaults. § 707(b)(2)(A) and (B), Bankruptcy Code. No evidence was presented at the confirmation hearing to establish the amount of the debtor's projected disposable income under the means test. The Federal Rules of Bankruptcy Procedure do not specify who has the burden of proof on an objection to confirmation of a chapter 11 plan, but it seems reasonable, even if the ultimate burden of proof rests on the plan proponent, to require an objecting party to shoulder the initial burden of producing evidence that a plan does not meet a particular statutory requirement. Accordingly, in the absence of some evidence that the plan fails to satisfy the projected disposable income test, the court will assume that the requirement has been met.

set for the meeting of creditors. Since Ms. Perry did not file a timely complaint to exclude the debt from discharge, she has no legal basis to complain that the plan does not pay her claim in full.

Since Classes II through VII are impaired and did not accept the plan, the plan can be confirmed only if the court finds that the plan is fair and equitable to, and does not discriminate unfairly against, those classes. The classes in question represent claims secured by real estate, or in one case, a motor vehicle. The motor vehicle loan will be paid in full on the effective date of the plan. The remaining loans will receive contractual payments going forward, with arrears to be paid over 60 months with interest at 8%. In order to be fair and equitable to a class of secured claims that has not accepted a plan, the plan must, at a minimum, provide that the holders of the claims will retain their liens and will receive, on account of their claims, deferred cash payments having a present value equal to the allowed amounts of their claims. § 1129(b)(A)(2), Bankruptcy Code. While the plan does not expressly state that the holders of the Class II through VII claims will retain their liens until they are paid in full, such retention is implied. Furthermore, since the creditors will receive their full contractual payments on a going-forward basis and 8% interest on their arrears, the requirement of payments having a present value at least equal to the allowed secured claim is easily satisfied.

One final observation is perhaps appropriate. The court can readily appreciate that creditors are aggrieved when a bankruptcy filing results in less than full payment of their claims. Frequently—particularly when the creditor is a private individual—nonpayment of a legitimate debt can work a genuine hardship. Chapter 11, however, incorporates policy choices that have been made by Congress to enable financially-distressed companies and individuals to reorganize

6

their debts and obtain a fresh start.  Not infrequently, that fresh start comes at the expense of creditors who may, depending on the available funding, receive little or nothing on account of their claims.  This is unfortunate but is also the result of economic realities — sometimes there simply is not enough money to pay claims in full.  When that occurs, the wholly understandable desire of creditors to be paid must yield to the policies favoring reorganization.

A separate order will be entered confirming the debtor's plan.

Date: _____         _____
                                    Stephen S. Mitchell
Alexandria, Virginia                United States Bankruptcy Judge


Copies to:

Pierre Bennett
2127 Cabots Point Lane
Reston, VA 20191
Debtor

Joseph Michael Langone, Esquire
Law Offices of Joseph M. Langone
11876 Sunrise Valley Dr. Suite 201-C
Reston, VA 20191
Counsel for the debtor in possession

Jack Frankel, Esquire
Office of the United States Trustee
115 South Union St., Suite 210
Alexandria, VA  22314

Cathy L. Perry
510 W. Belmont Ave., Apt. 1411
Chicago, IL 60657
Objecting creditor